Case 16-6252 and 16-6360. In Re Estate of Jerry West v. United States Department of Veterans Affairs. Argument not to exceed 15 minutes per side. Mr. Sturgill, you may proceed for the appellant when you're ready. May it please the Court, I'm Lowell Sturgill from the Department of Justice, representing the Department of Veterans Affairs. I'd like to, if I may, reserve three minutes. Counsel, you might want to either raise the podium or speak more loudly or raise the mic. You're kind of tall and I was having trouble hearing you. Let me try to speak up a little bit. It's winter, so it's gotten to my voice. Three minutes for remodel, if I may. Your Honor, in Beeman v. Brown, this Court held that 38 U.S.C. 511 broadly precludes judicial review of Veterans Affairs decisions that relate to veterans' benefits by any court other than the Court of Veterans' Appeals and the Federal Circuit. Section 511 applies here because this case concerns whether the estate is entitled to veterans' benefits that were due in owing to a veteran, Jerry West, when he died. Well, they already had them as cash, but you can continue. Okay. We'll talk about that. With those two propositions, the third basic proposition is that because Section 511 applies here, it left the district court with no jurisdiction to do anything other than dismiss the case for lack of subject matter jurisdiction. And the only other thing I think you need to know is the probate exception, interesting though it may be, doesn't change any of that because it's only a prudential doctrine, as the Supreme Court told us in the Marshall case. That's the basic proposition that we have before you. I think that's all you need to decide, and I'm prepared to go through that in a little more detail. In terms of who's got what, because Judge Kethledge said something like they've already got it, but as I understand it, you've got the money. The bank gave it back to you. That's correct. The state court issued an order, but that's been on, was taken care of. Even though the district court took it, the money isn't in anybody's hands in Kentucky. The money's still in your hands. That's correct. Okay. Now, as I understand it, and correct me if I'm wrong, if you filed the appropriate form and said you were the spouse or the children or the funeral home, you'd be happy to give somebody else the money. It's not that the government wants the money. Is that also fair? As long as they're an eligible party. Right. I mean, I'm just saying I know there's the four steps. And is there even a timeliness bar on that? That is, I don't know if there is a spouse or a funeral home. If they said, okay, fine, Mr. Hardin hasn't filed the form, but we'd like to file the form now, would that be okay? Section 5121 has a one-year statute of limitations. Now, a person like that could try to argue equitable tolling, and we don't know how that would come out. We don't know what the department's position would be. That's the answer. But, again, at least in principle, when that information was sent to Mr. Hardin's law office in June, that the VA wanted the money back from the bank, they could have tried to stop it. There's some rules about when you can contest it. And presumably, if they had read the regs, they could have said, oh, there is a spouse, there is a child. If the estate paid the funeral expenses, then the estate could have filed, right? That's correct. Okay. So at that point, they were within the one-year statute, so they could have filed. They chose not to. I mean, the legally interesting thing to me would be if the bank hadn't given you the money back and you went into probate court to try to get it, then would we say you're entitled to go back to Veterans Affairs? But you've got the money. They're coming after you. That's correct. All right. Well, you know, I guess to talk about the other side of that coin, my understanding, and please correct me if I'm wrong factually, is that these folks actually didn't know about this account being drained or whatever you want to say until the money had actually moved. Am I mistaken in that? So I think the answer to the question is the Treasury Department did recoup the money from the bank account. Now, I don't know if they knew. Before they knew about it. I don't have any reason to dispute that. Your supplemental brief says that they got the money back on June 14th, and the letter to Hardin's law office is dated June 10th. Now, that's not a lot of time, but it is some time. So, right. So I think, as I understand it, on June 10th, the estate learned that the VA was going to reclaim the money, but then the transfer from the bank to the Treasury happened four days later. Okay. I mean, did the letter specify any procedure where they could contest this money getting taken out of their account? I don't think it did. The letter is from the bank. It's not from you. Right. Correct. Okay. So the concern I have here is, I mean, property for purposes of procedural due process is defined by state law. I mean, I think that's Edelman v. Jordan. I know it's a Rehnquist opinion somewhere. Now, whether it's exclusively state law or not, I guess I'd have to go back and look. But basically, it's defined by state law. And state law, pretty much throughout the country, because it's actually part of the Uniform Commercial Code, says if you get a check and you deposit it and it clears and the funds hit your account and now they're cash, then that is your property. And I know the Treasury has this reclamation procedure, but it seems very odd and troubling to me that potentially, with no notice to the citizen, the Treasury can come in and, as a practical matter, coerce the bank to transfer money out of a citizen's account to the government with no notice, no opportunity, no hearing, no opportunity to contest that. That would seem to be a fairly brazen procedural due process violation. But I want to hear why you think I'm wrong. Sure. Well, I think our first response is the plaintiff's never made that argument. I don't know about that. I think they kind of do, but I'm really not. I understand that that's your first response, and I understand that's in here. I'm interested in the substantive answer. So if I could, just without annoying you, I think they did in their Court of Appeals brief. I don't think they did below. So the answer to the question is. And I understand your point, and we take that seriously. But on the substance, this really, frankly, kind of bothers me. I didn't know this could happen in America, that the government can just come in and drain your account, and literally checks bouncing and so on. I mean, that's a serious thing. So what am I getting wrong in my recollection of procedural due process here? Well, let me just start at the beginning. There's a federal statute, which is down in the briefs, that authorizes Treasury to go through this process. 31 U.S.C. 3712, right? So you're way ahead of me. No surprises, but that's it. And then the second thing I would say is that, as our brief explains, due process, when it applies, is sometimes satisfied by a post-deprivation hearing. Yeah, I've seen that in cases where, you know, a guy's in jail or something, and they're docking him for a day in jail. I mean, is it the government's position that post-deprivation is enough if the government passes some statute that says, if we think you owe the government money, the Treasury can go to the bank and say, either you pay us, or you pay us the easy way or the hard way. You can transfer it from the citizen's account, or we're going to take it from your Fed account, the bank's. And any time the government thinks it's owed money, it goes to the bank, they get the money, and now the citizen with no notice has to sort of go through some process to get it back. Is that the government thinks it can do that? Absolutely. Really? That's the position in our brief. And it's no different from the other ways that the VA is statutorily and authorized to recoup benefits. Another way, for example, is by deducting benefits from future payments. They can just unilaterally say, okay, well, look, you're supposed to get. That's different, though, but it's not yet property. It's not yet cash in somebody's account. I mean, let's say the government figures out that they've been overpaying my law clerks 500 bucks a month, and they work for me for a year, and it's 11 months in. And the government, somebody figures out, you know what, we paid this guy 500 bucks too much a month, and so we've overpaid him about five grand. And with no notice, no nothing, and let's say, you know, you probably wouldn't even have that much. So they take all the money out of the account overnight, and that's totally fine under the due process clause, just to go in and take the money out of their account? So one thing I would say is I think the court should limit its consideration of this issue to the facts of this case, and we're talking about veterans benefits. Yeah, but I'm allowed to ask hypothetical questions to explore the implications of the government's position. I mean, you know, you can't take property without due process of law. I mean, it's a pretty straightforward statement in the Constitution. And it's property. It's taken. And so now the government's position, I gather, is that post deprivation is always good enough, notwithstanding the nature of the invasion here. Is that the government's position? I'm not trying to be, you know, like a jerk. I mean, I'm just really trying to understand the government's position. Is that it? So our position is that post deprivation, a remedy, is sufficient in this context. Now, you raise other contexts, and I don't know. Well, what's the difference? I'm trying to answer your question. Yeah, go ahead. I don't know that there is a difference, but I won't concede it. Yeah, I mean, I asked you general questions, and you said it's the same there. And that implies that this case, you know, if it's okay here, it's okay in the cases I asked you about because you said it is. But you want to narrow it to it's only here. I understand that. But it's, you know, the way we think about this is not just this case. And I've never encountered this reclamation thing before. Even in this context, in one sense, it doesn't come out of his account until the bank decides. That is, you're going after the bank, aren't you? You're saying, bank, please pay us some money. So presumably he got some kind of, well, he did get this notice from the bank that this was going to happen potentially. Presumably they could have remonstrated against the bank. If the lawyer had looked at the law, it would have said, hey, you've got 30 days to tell the VA to take a hike, right? Right. And then things might have happened thereafter. But as to what happens to his account, that's between him and the bank. And if Kethledge were their lawyer, he might have a due process, have some type of contractual claim against the bank. Is it the government's position that the bank is the one actually taking the money here? No, no. Clearly the government is taking the money from the bank. The bank is an instrument in making it happen. But we're not denying that the government is. I mean, the government approximately causes the money to get taken out of the guy's account. Sure. Okay. Counsel, as I understand your position, it's that there's no subject matter jurisdiction in the district court. And, therefore, the district court should dismiss the case rather than remain back to the state court. Is that it? Yes. Okay. Can is that, could the district court really do that, simply dismiss in light of 28 U.S.C. section 1447? Well, that's important because that statute states that when the district court lacks subject matter jurisdiction, the case shall be remanded, period. It doesn't empower the district court to simply dismiss. It says the case has to be remanded, which would mean that even if there were no subject matter jurisdiction, the district court would have to remand. Correct? Section 511, I think, as this court held in Beeman, requires dismissal, regardless of how 1447 is construed. Frankly, I don't recall the answer to your question. The procedural issue is what happens if there's no subject matter jurisdiction following a removal. And section 1447 says that in those circumstances, the district court has to remand. So what we're saying is section 511, I'm sorry. Well, okay, I know that deals with the structure of governing disposition with regard to the Veterans Administration benefits, which is a different statutory scheme. So if you're going to refer me back to section 511, then I won't pursue the matter with you further. If I could? Sure. I think the answer is that 1447, which would otherwise preclude a dismissal and require remand, doesn't require that here because if that were the case, you'd be remanding to a court, the Kentucky probate court, that doesn't have jurisdiction. So it can't be that 1447 requires a remand to a court that doesn't have jurisdiction. But the Kentucky court then has the responsibility of saying that it doesn't have jurisdiction if it doesn't. And if it makes the wrong decision, there's an appeal to the Kentucky Court of Appeals. And subsequently on the way to the Supreme Court if necessary. So that's exactly what Congress enacted section 511 to preclude. These questions are supposed to be decided in federal court. And the fact that the case was properly removed, first of all. Well, yeah, in federal court, but not by the U.S. District Court. There's a U.S. Court of Appeals for the Federal Circuit following a decision by the Court of Veterans' Appeals. So it would seem that by going to district court, everybody that you're opposing parties just went to the wrong court. Or they didn't go to the wrong court. But the process is that someone who's pursuing veterans' benefits goes to the Board of Veterans' Appeals. And if that person's not satisfied there, then they go to the Court of Veterans' Appeals. And from there to the U.S. Court of Appeals for the Federal Circuit. So the U.S. District Court doesn't have subject matter jurisdiction, but it's not because of the probate exception in state court. Is that right or is that not right? To the extent that I understand, Your Honor, I apologize if I don't. They could have taken that route. They decided not to. The fact that it didn't go that way is because of their decision. Okay. If I could. Yes. On this question of 1447, as I understand it, and correct me if I'm wrong or my colleagues or your adversary can correct me, 1447D says an order remanding to the state court is not reviewable on appeal or otherwise, except that an order remanding to a case which was removed pursuant to 1442 shall be reviewable by appeal. And I thought your position was that you removed it under 1442, and so you could get this review on appeal. So thank you, Judge Boggs. I think that's a far better answer and the only one to the question that was asked. 1447D is the applicable part of 1447 and it sets out a procedure for what happens when a case is removed under 1442. In a case that's removed under a different statute, then you would be in a scenario that you all have described where the appropriate thing would be to do is remand to state court, but not when a removal is under Section 1442. Thank you, Judge Boggs. I've run out of time, but I'm happy to. Okay. Yeah, you're way over. You have some rebuttal time, so we'll get back to you on rebuttal. Good afternoon, Your Honors. May it please the Court. I'm Jason Harden, president of my co-counsel, Alan Cobb, for the Appalese Cross Appellants, the estate of Jerry West. First, I want to thank you all for the privilege to be here today. Being a country boy from Kentucky, this is quite an honor, and I'll first admit I'm nervous as heck. Don't worry about it. Everybody gets nervous. I'm going to try to keep it pretty simple. There's no sense regurgitating the briefs. It's been fully briefed, and I think everything speaks for itself. I think the place to really start are the two questions that you all posed for both parties for the supplemental briefs. I think those two questions kind of encapsulate this case really well and gets to the kernel of the case. Now, as we did argue in our supplemental brief, it's our position that this retroactive disability payment was fixed and no longer subject to determination by the VA, Veterans Affairs. And most importantly- I'm sorry, when you say it was fixed, you mean that all the reclamation laws are just wrong? No, I'm just saying the amount itself was summed- Oh, the fixed. The sum was fixed. Yes, okay. There was no appeal by the veteran. Of course, his appeal of that amount passed with him, unfortunately. And I understand through the VA regs there are some sort of rules of revision that the VA can do if they feel that there was some error in an amount or something that was miscalculated, and there's nothing to show in the record that the VA initiated any of those kind of proceedings. And most importantly, of course, the probate exception that we've talked about a lot and is thoroughly briefed as set out in Mark and V. Allen, that places this matter, I think, squarely in the hands of the state probate court, specifically the Jefferson District Probate Court, which did, in fact, accept the probate petition, accepted the monies that are in dispute, and subsequently issued the order demanding that the VA return the monies to the estate, which sort of lit the fire to this whole powder keg, if you will. So does that mean that, generically, if a probate court decides that the government owes any estate money, they can issue an order to the government, no matter what the regulatory system is, and there's no way to get it into federal court? Well, not under that broad of a description. I think it has to be an asset that actually has been identified as a probatable asset by the proper fiduciary, an executor, or an administrator. Well, what do you say about Section 511B of the Veterans Statute? It says that all benefit determinations have to be made by the secretary where there is any question of veterans' benefits for dependents or survivors of veterans, and the decision of the secretary as to any question should be final and conclusive. Then, of course, there's an avenue of appeal to the Board of Veterans Affairs, and from that to the appropriate federal courts. But that procedure doesn't contemplate any decision by the state probate court pursuant to any state probate exception. Well, as I understand it, and Section 511 does speak for itself, but as I read that, and it specifically says it references benefits, and as I interpreted all the arguments made by the government and all the legal authority they cited, they all seem to gravitate around determination of benefits. What is owed or what is not, not an amount that was determined, that was awarded, and then subsequently, as we would argue... You're right that they're not complaining about the amount, but that because he died, it's not that the government wants the money. The government wants it to go according to the scheme, right? Spouse, children, parents, and then expenses. Right. And only if all of those failed would the government say that they get it. Yes, sir. That takes us back to, I think it's 38 U.S.C. 5121, which, of course, was never argued by the government at the district court level. But I think if they're allowed to argue that anew in these proceedings, you can't look at 5121 in isolation. I think you have to look at it in context of 38 U.S.C. 5122, which more closely resembles this scenario where you're talking accrued benefits. What does 5122 say that you're relying on?  I apologize, Your Honor. I will flip to that. 5122 involves the cancellation of checks mailed to deceased payees. Now, to be honest with you, I hadn't even heard of all these VA's rules and regulations until the appeal, because, again, they were never argued by the government at the district court level. But when they finally brought them to the court. Well, when you got the letter from the bank, though, you might have thought there was something going on. That's interesting you say, because if you examine the record, the letter from the bank was dated June 10, 2014. The account, and this is also referenced in the district court's memorandum and order, the money was confiscated from my IOLTA account, that's our pooled client escrow account, on the same day, June 10. That is in the record. So, in other words, when I got the letter from the bank that says, you know, we've received this notice of reclamation, it was interesting, I remember that. You might have noticed that presumably the bank sent you something that said that was happening. I mean, their brief says that they got the money on the 14th. Is that the difference? The bank was futzing around for the four days, or do you dispute that? I don't know the administrative process once it's taken out. I know, and we did argue this, and like I said, the dates are referenced in the district court order. The letter from the bank was dated June 10. I remember it specifically because I had been on vacation in June. So, in July, I come back, and I also was reconciling my bank statements, and guess when the money was taken out? June 10. There was absolutely zero time to contest the taking of this. And we're not talking just a citizen's account. This is our IOLTA account. This is a state-overseen state. I mean, the state Supreme Court Bar of Kentucky oversees our IOLTA accounts. It is actually safer to have those probate funds in an IOLTA account than it is even in an executor's account because of those safeguards and protections. And you wouldn't overdraw the IOLTA account. Exactly. So that was really the burr under my saddle, is like there was no notice. June 10 was the date. Of course, I'm not going to get the letter on June 10. I got it a few days later, and the money was already gone. Now, did you ever think about trying to get the money through the form that they sent? Is there a spouse or children or funeral home? There isn't a strange daughter. Of course, the primary beneficiary under the will is the ex-wife. But we don't want to get into that. Well, but we see why there could be a conflict between the estate qua estate and the statutory beneficiaries qua statutory beneficiaries. Is that fair? Right. But that circles us back to this 5122, this cancellation of checks mailed to deceased payees. I think if you consider 5121, you have to look at 5122. I can only interpret that as Congress's attempt to sort of liberalize 5121 because I'm reading verbatim the last sentence of 5122 says, any amount not paid in the manner provided in Section 5121, which the government relies on for the first time in these proceedings, shall be paid to the estate of the deceased payee unless the estate will escheat. And the facts don't warrant that it would escheat to the estate because Well, regardless of Section 5122, aren't we trying to decipher what court or entity properly has jurisdiction here? Because it would seem that the argument you're making is at odds with the Beeman case that says that district courts are precluded from decisions regarding veterans' benefits, even precluded from constitutional claims, and those challenges have to be in the court of veterans' appeals. But you want the matter decided by a state court pursuant to the probate exception. So if you're right about that, you have to explain why Beeman doesn't apply. Well, Beeman, of course, are totally separate facts. Of all the cases, there is no fact pattern like this fact pattern. This is completely a case of first impression where you Well, wait a minute now. You're talking about veterans' benefits, and so it's a matter of who's entitled to the benefits in terms of dependents or survivors of veterans, which is what is addressed by Section 511B, which would bring the whole matter within the ambit of Beeman. So there's nothing unusual. This is a veterans' benefits matter. There's nothing Well, there's determination of benefits, because as I recall from Beeman, we weren't talking about the estate of a deceased veteran for a retroactive award that had already been awarded and issued. It doesn't matter. The statutory scheme covers dependents and survivors of veterans. Correct, but we have this probate twist on this. We're not talking about providing Well, only if the federal statutory scheme for veterans doesn't apply, which is, I guess, what we're debating here. Well, yeah, I mean, I think there's some real constitutional question marks about the statute as it's being applied. I mean, the way the government's applying it, there seems to be no end, and that neither the regulations can be challenged nor even the constitutionality. Well, the VA has determined that the money does not flow directly to the estate. They've determined that it should go by this statutory order. Presumably, you could have gone to the Court of Veterans' Appeals and either say that's unconstitutional or the ex-wife is nicer than the estranged daughter, or you could have said anything, and then you would get review in the Veterans' Appeals, in the Federal Circuit, in the Supreme Court, right? You'd get to process out the wazoo. Potentially, but I think the fact that then Congress passed 5122, they acknowledged that there could be substantial injustice with the way 5121 is applied, and if you read 5122, then you say it does something about real checks? That's what I'm still not understanding your point. Yeah, and with your permission, I always hate to just read a statute verbatim, but this is what it reads. A check received by a payee in the payment of accrued benefits shall, if the payee died on or after the last day of the period covered by the check, be returned to the issuing office and canceled unless negotiated by the payee or the duly appointed representative of the payee's estate. That's what happened here. The government's arguing, well, they should have returned the check. Well, stuff happens. Let's even assume it was a mistake. We're not arguing it is, but let's say the executive endorsed it by mistake. There still has to be due process in an orderly way for the government to recoup that money, and once the probate court's tentacles are in it, the state court has determined what's been identified on the petition, they in good faith believe it was probatable. That was the avenue for the government, and they had notice and opportunity to attend the probate proceedings and make those arguments. They might have won. If they made the arguments here in district court or probate court, the judge may have looked at me and said, But so then taking that, then 31 U.S.C. 3712, which allows reclamation, is a nullity? Well, again, that was never argued at the lower level. We've yet to see in any of your briefing what actually was the legal authority for the government to confiscate the money from an IOTA account in the fashion that they had. So I can't sit here today and say that they even followed those reclamation rules. But I know we didn't have notice and opportunity to be heard on that. Whether they followed the rules is one thing. Whether this whole thing violates one's right not to have your property taken without due process is another question. Well, I would say really to kind of summarize, I think we're getting low on time. The bottom line here is three points I really have to make. Number one, we're not asking for this court to create new law or to change existing law. I think this case is certainly governed by Markham v. Allen. It's the law of the land. It's been relatively unchanged for 70-plus years. The probate court and Jefferson District Court took custody of this money. You can argue should they or should they have not, but when you look at, like I said, 38 U.S.C. 5122, Congress even figured, you know, there's going to be substantial injustice here. We need a provision that may cover even a mistakenly endorsed check. Well, when you say that they've taken custody of it, it says a federal court, and I'm quoting from Markham, may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court. And if the money's been returned to the VA, how is it in the custody of the state court at the time that we're concerned about it? In other words, I think there would be a very interesting question if they hadn't gotten the money. Well, I guess that would be like once the hostage taker lets the hostage go, why are we concerned about it? Well, but that's, I mean, part of the thing is you don't want the probate exception in its terms. I mean, I'm reading it right, am I not? So that if the state court asserts that it has custody of something, but it doesn't really have custody of it, the probate exception still applies? Probate court says, well, they should have paid us some money, so therefore we have custody of it? Well, I think that's not giving much respect to the state probate court. I mean, they're going to look at these cases with diligence, and I think in this one, you know, you had a proper filing of a petition. Well, but you're really saying that the words should be property in the custody or that ought to be in the custody of a state court. Well, it was in the custody of the court when you had this illegal confiscation, and nowhere in Markham does it even require, you know, a physical custody. As an officer of the court and being in an IOLTA account that is overseen and regulated by the state bar, it's in essence the same as if it was in. Well, but that would be more like you should have brought an action saying that the government's action back then violated Markham. Well, I think we took the appropriate action. I mean, the filing that we filed in the probate court would have been the same type of filing we would have done if it was a private creditor that had come in and basically taken assets away. Well, I mean, between 2014 and 2016, the actual order to the feds by the state court was when? Wasn't it like 20 months later? 20 months from? From the time of, let's say, the nasty letter from the bank. No, I do. Yeah, there was a time lag because we did try to attempt to resolve this extrajudicially. This was the series of phone calls because, again, we were sort of at a loss. You know, again, the letter did not come from the VA, and to kind of circle back to 511, it talks about decisions by the secretary. In the meantime, they told you how to get the money or how these other people could get the money, presumably, if you're just the lawyer for the estate, you want the estate to get the money, but you didn't want to go into the administrative process. Maybe he thought you had a better avenue, but you knew that there was an administrative process. Well, you know, my actions, as was the executor's, are guided by the probate laws of Kentucky, and we believe it was a probatable asset and that we took the appropriate action. But, again, we're not asking for a new law to be created or a change of existing law. We're not asking for anything that would unnecessarily burden the VA. We're asking what, in our opinion, would just be a legal and fair result, and what's legal is applying the probate exception, as outlined in Markham, and galvanized by even more. Counselor, you might want to wrap up. You're a real lifesaver on the long, long time. My apologies. That's all I have here, sirs, and I appreciate your time today. Thank you. Your Honor, we believe that counsel is reading a limitation to Section 511 that isn't there. They try to limit the section to what they call the determination, and I think what they mean is an initial ratings determination about whether a veteran is disabled and needs the money. But that's not what the statute says. If we're reading statutes today, what it says is the secretary shall decide all questions of law, in fact, necessary to a decision by the secretary under a law that affects the provision of benefits by the secretary to veterans. Okay? So we have a decision here. The secretary decided that because Jerry West died before the check was issued, that the estate is not entitled to the money. Okay? That's the decision. Second question, is there a law? not just that he died before it was negotiated. Correct. And this gets into the question of whether Section 5121 or 5122 applies, which they're also wrong about. But the first thing I would say about that, to the extent we're discussing that at all, all that does is prove this is a case about eligibility for veterans' benefits, which district courts and state courts don't have jurisdiction about. Yeah. I mean, eligibility questions are one thing. I mean, when it's already somebody's property, that's a different situation. So let me say this. There's nothing in the statute that says Section 511 doesn't apply when the VA is reclaiming benefits. So, again, what they're trying to do is import something into the plain language of the statute that's not there. No. I mean, again, the concern I would have is that once it becomes property in the constitutional sense, we're in a different situation than before then. Before then, I don't really have much quarrel with what you're saying jurisdictionally. But once it becomes property, then there are certain protections that the Constitution provides. Let me ask you this question. Sure. Would you agree that the money in the account was property at the time it was taken out? What I would agree is that there was no entitlement to the money. Was it property or not, though? No. That's my question. Okay. What Beeman says, and this is what I have to go on, Beeman says there are gratuitous benefits, right? And the entitlement to gratuitous benefits is determined by federal law, not state law. We have a federal statute that authorizes Treasury to do exactly what they did. And I think that's perfectly constitutional. If I could just tack back to 5122 briefly. Again, we're reading statutes here. They read it, but they didn't tell you the important part of it. 5122 says the following. A check received by a payee. Okay, well, Wes didn't receive the check. He's deceased. What the Wilkes case that we cited in our brief says, so 5122 only applies when a check is issued at the time the recipient is still alive. A deceased person can't receive a check. So 5122 applies as the Wilkes case. The estate's not the payee in your view. I'm sorry? The estate is not the payee in the terms of that language there. Right, because it's, no, that's right. Remind me, in Beeman, was the money already in the person's account? So Beeman was a different kind of case altogether. Do you recall, was it already money in somebody's account? No. So that's a different case. I'm not saying on the substantive issue of whether the government is entitled to get the money back that you have a problem. I'm just saying that once it becomes property, you have to do some process unless I'm missing something. And just because 3712 says what it says doesn't mean the Fifth Amendment doesn't say what it says. I know this is startling to the government, but I was startled when I read what happened here, and I'm troubled by it. And I'm still troubled by it. Do you have any idea of the sequence of passage of 3712, 31 U.S.C. 3712, as opposed to 511? I'm just sort of curious as to whether, you know, 31 U.S.C. 3712 was a bunch of guys sat down and decided, okay, we're going to violate the Fifth Amendment by allowing the government to reclaim money, or whether it was just a way of enforcing 511. Well, I've said this before, and it's not satisfactory to you. No, not necessarily. You know what I'm going to say. Go ahead. You may want to go back to Washington and say that some people looking at 3712 are kind of funny. All I'm saying is I haven't already decided it's not satisfactory. I'm telling you I'm troubled. But I want to hear what you have to say. Please say it. Well, what I'm trying to say is, again, our basic position is that even if you are troubled, this is not the case to write that because the plaintiffs did not raise a due process claim in the district court and thereby did not properly preserve it. This is the unusual case where you're the appellant. And so, you know, we have some latitude in that regard. Not to create claims that they didn't raise in the district court. Well, we'll figure that out. But I take it part of your defense might be that these are gratuitous benefits and therefore they go within the statutory scheme and it doesn't really become property. Are you going to make that argument? Well, see, this is the thing, right? They didn't raise a due process argument until their second brief. It's in their brief in this case. Correct, their second brief on appeal. That's when they raised it. So they hadn't raised it below. Okay, go ahead. Okay, so it was not addressed in district court. So we looked at their argument. We made a response. It wasn't raised below. We made a response. We made some points. Did we make every point conceivably possible that we could make? That Judge Boggs has come up with, for example. I don't know the answer to that question.  We haven't had a chance to take a position. It's the second brief. It's their first appeal brief. And then you filed another one, right? Correct. What I'm telling you is we took a position. We made some arguments. We may not have come up with every potential argument, but we did the best we could on a claim that's been waived. That's way over. So there may be additional arguments. I'm answering Judge Boggs' question by saying I don't know the answers. There may be an additional ground we could defend the due process claim on. I don't know. We haven't had a chance to take a position on that. I mean, you had an opportunity to have a section that says the estate's due process claim fails on the merits. That's correct. And at some point, you know, if we think, or if one of us thinks that's fairly presented, you know, we can address it. That's correct. May I have just one second to talk about something that Judge Boggs, and I'm way over my time. Something that Judge Boggs. Let's hear it quickly. The question about whether it mattered that the court didn't have custody of the check at the time the removal happened. In Chevalier at page 803, and then I'll stop, the court said this, the doctrine of prior exclusive jurisdiction, which is the doctrine that is relevant in this case, applies only if a state court previously exercised jurisdiction over that same property, and here's the key language, and retains jurisdiction in a separate concurrent proceeding. They don't have that situation here. From Chevalier. Yes. Thank you very much. Thank you very much. And the case is submitted.